# EXHIBIT 41

| | | |
|---|---|---|
| STATE OF INDIANA ) | | HAMILTON COUNTY COURT |
| ) SS: | | |
| COUNTY OF HAMILTON ) | | CAUSE NO. 29C01 1601 CC 344 |

JACCD, LLC,  )
        Plaintiff,  )
        vs.  )
FC DOMINO ACQUISITION, LLC, IHR CANTERBURY RE, LLC, CYPRESS GROVE RE, LLC, EHF MICHIANA RE, LLC, IHR ELKHART RE, LLC, IHR IRONWOOD RE, LLC, IHR MEADOW VIEW HEALTH RE, LLC, IHR MEDCO FRENCH LICK RE, LLC, IHR MOUNT VERNON RE, LLC, MP SCOTT VILLA RE, LLC, MP RE 2 LLC, IHR WESTPARK RE, LLC, FCE EASTGATE, LLC, FCE PARKVIEW, LLC, FCE PRAIRIE VILLAGE, LLC, FCE PROFESSIONAL CARE, LLC, FCE TODD-DICKEY, LLC AND IHR RE 2 LLC  )
        Defendants.  )

## COMPLAINT FOR DAMAGES

Plaintiff JACCD, LLC ("Consultant") for its Complaint for Damages against FC Domino Acquisition, LLC ("Guarantor") and IHR Canterbury RE, LLC, Cypress Grove RE, LLC, EHF Michiana RE, LLC, IHR Elkhart RE, LLC, IHR Ironwood RE, LLC, IHR Meadow View Health RE, LLC, IHR Medco French Lick RE, LLC, IHR Mount Vernon RE, LLC, MP Scott Villa RE, LLC, MP RE 2 LLC, IHR Westpark RE, LLC, FCE Eastgate, LLC, FCE Parkview, LLC, FCE Prairie Village, LLC, FCE Professional Care, LLC, FCE Todd-Dickey, LLC and IHR RE 2 LLC ("Lessors") (Guarantor and Lessor collectively referred to as "Company"), states

## Facts

1. Each Lessor owns a healthcare facility in the State of Indiana and is a party to a lease agreement with The Health and Hospital Corporation of Marion County related to each defendant's healthcare facility.

2. Consultant entered a Consulting Agreement with the Company to provide the services identified in that Consulting Agreement. A true and accurate copy of the Consulting Agreement is attached as Exhibit 1.

3. Pursuant to paragraph 4 of the Consulting Agreement, the Lessors were obligated to pay Consultant $525,000 on each of October 1, 2015 and January 1, 2016.

4. Pursuant to paragraph 20, Guarantor guaranteed the full and complete payment and performance of Lessors under the Consulting Agreement.

5. Guarantor agreed to be jointly and severally liable with Lessors to pay Consultant.

6. Lessors failed to make the $525,000 payment due Consultant on October 1, 2015.

7. On December 18, 2015, Consultant sent Lessors and Guarantor the letter attached as Exhibit 2, demanding payment of the owed $525,000 by December 24, 2015.

8. Neither Lessors nor Guarantor responded to Consultant's December 18 letter and never paid the owed the $525,000.

9. Company also did not pay the $525,000 owed Consultant on January 1, 2016.

10. There is no excuse for Lessors' or Guarantor's failure to pay and Consultant has performed all services required under the Consulting Agreement.

11. Lessors and Guarantor currently owe Consultant $1,050,000.

### Count I: Breach of Contract
### (Against "Lessors")

12. Consultant incorporates by reference its allegations in paragraphs 1-9.

13. The Consulting Agreement between and among Consultant and Company constitutes a valid, binding contract.

14. Consultant has fully performed its obligations under the Consulting Agreement.

15. Lessors have repudiated and breached the Consulting Agreement by not paying Consultant two payments of $525,000 due on October 1, 2015 and January 1, 2016.

16. Lessors' breach has caused Consultant damages.

### Count II: Account Stated
### (Against "Lessors")

17. Consultant incorporates by reference its allegations in paragraphs 1-14.

18. On December 18, 2015, Consultant demanded payment of the $525,000 that Lessors failed to pay Consultant on October 1, 2015.

19. A reasonable time has passed since Consultant's demand.

20. Lessors have not responded to Consultant's demand in any way.

21. Accordingly, an account stated has arisen in the amount of $525,000, owed to Consultant.

### Count III: Breach of Guarantee
### (Against "Guarantor")

22. Consultant incorporates by reference its allegations in paragraphs 1-21.

23. The Consulting Agreement between and among Consultant and Guarantor constitutes a valid, binding contract.

24. Guarantor guaranteed the full and complete payment and performance of all of the obligations of the Lessors under the Consulting Agreement ("Guarantee").

25. Consultant has fully performed its obligations under the Consulting Agreement.

26. Guarantor has repudiated and breached the Guarantee by failing to pay Consultant the indebtedness of $525,000 due on October 1, 2015 to Consultant upon demand.

27. Guarantor has repudiated and breached the Guarantee by failing to pay Consultant the indebtedness of $525,000 due on January 1, 2016 to Consultant.

28. Guarantor's breach has caused Consultant damages.

### Count IV: Account Stated
### (Against "Guarantor")

29. Consultant incorporates by reference its allegations in paragraphs 1-28.

30. On December 18, 2015, Consultant demanded payment of the $525,000 Guarantor failed to pay Consultant on October 1, 2015.

31. A reasonable time has passed since Consultant's demand.

32. Guarantor has not responded to Consultant's demand in any way.

33. Accordingly, an account stated has arisen in the amount of $525,000, owed to Consultant.

WHEREFORE, plaintiff JACCD, LLC requests that the Court enter judgment in its favor and against defendants FC Domino Acquisition, LLC, IHR Canterbury RE, LLC, Cypress Grove RE, LLC, EHF Michiana RE, LLC, IHR Elkhart RE, LLC, IHR Ironwood RE, LLC, IHR Meadow View Health RE, LLC, IHR Medco French Lick RE, LLC, IHR Mount Vernon RE, LLC, MP Scott Villa RE, LLC, MP RE 2 LLC, IHR Westpark RE, LLC, FCE Eastgate, LLC, FCE Parkview, LLC, FCE Prairie Village, LLC, FCE Professional Care, LLC, FCE Todd-Dickey, LLC and IHR RE 2 LLC on all issues raised in Plaintiff's Complaint, for costs of this

action, for damages sufficient to compensate it for its losses, for attorneys' fees, for a trial by jury and for all other just and proper relief.

                                      Respectfully submitted,

                                      */s/ T. Joseph Wendt*

                                      T. Joseph Wendt, Atty. # 19622-49
                                      Barnes & Thornburg LLP
                                      11 South Meridian Street
                                      Indianapolis, IN 46204
                                      Telephone: 317-236-1313
                                      Facsimile: 317-231-7433
                                      Email: jwendt@btlaw.com

DMS 3447718v2

# CONSULTING AGREEMENT

This CONSULTING AGREEMENT (this "Agreement"), dated July 1, 2015, is entered into by and among each of those entities listed on Schedule 1 hereto (individually and collectively, as the context requires, the "Company"), FC Domino Acquisition, LLC, a Delaware limited liability company ("FC Domino"), and JACCD, LLC, an Indiana limited liability company ("Consultant").

WITNESSETH:

WHEREAS, The Health and Hospital Corporation of Marion County ("HHC"), as tenant, is party to (a) that certain Master Lease dated July 1, 2015, with IHR Canterbury RE, LLC, IHR Westpark RE, LLC, IHR Elkhart RE, LLC, IHR Ironwood RE, LLC, IHR Meadow View Health RE, LLC, IHR Medco French Lick RE, LLC, IHR Mount Vernon RE, LLC and MP Scott Villa RE, LLC, as landlords, (b) that certain Master Lease dated July 1, 2015, with Cypress Grove RE, LLC and MP RE 2 LLC, as landlords and (c) that certain Master Lease dated July 1, 2015, with FCE Eastgate, LLC, FCE Parkview, LLC, FCE Prairie Village, LLC, FCE Professional Care, LLC, FCE Todd-Dickey, LLC, IHR RE 2 LLC and EHF Michiana RE, LLC, as landlords (individually, a "Master Lease" and collectively, the "Master Leases");

WHEREAS, Company desires to engage Consultant for the period provided in this Agreement, and Consultant is willing to accept such engagement with Company, all in accordance with the terms and conditions set forth below; and

WHEREAS, FC Domino, an affiliate of Company, will benefit from the services provided by Consultant to Company, and in order to induce Consultant to enter into this Agreement has agreed to guaranty the obligations of Company to Consultant as set forth in this Agreement.

NOW, THEREFORE, for and in consideration of the premises hereof and the mutual covenants contained herein, the parties hereto hereby covenant and agree as follows:

1. <u>Engagement</u>. Company hereby engages Consultant as a consultant to Company and Consultant hereby accepts such engagement with Company, for the period set forth in Section 2 hereof, all upon the terms and conditions hereinafter set forth. Consultant affirms and represents that Consultant is under no obligation to any former employer or other party that is in any way inconsistent with, or that would be violated by, or that imposes any restriction upon, Consultant's acceptance of the engagement hereunder with Company or Consultant's undertakings under this Agreement.

2. <u>Term of Engagement</u>. Consultant's engagement under this Agreement shall commence on the Commencement Date (as defined in the Master Leases) (the "Effective Date") and shall terminate on the earlier of (a) after the termination of each of Master Leases by Company pursuant to and in accordance with the terms and conditions of such Master Leases, immediately upon receipt by Consultant of a notice from Company electing to terminate this Agreement and (b) the fifth (5th) anniversary of the Effective Date (the "Term"). At the conclusion of the Term, the

Page 1 | 8

US.58507598.02

EXHIBIT A

Company shall have no further obligation to continue paying the Consulting Fee to Consultant (other than any outstanding portion of the Consulting Fee that has not been timely paid by Company).

3. <u>Services Performed by Consultant</u>.

(a) Consultant shall perform the following services for Company (the "<u>Services</u>"): (i) general business consulting services; (ii) consult with the officers and representatives of the Company regarding certain business decisions and certain due diligence matters necessary of the Company relating to the acquisition and/or disposition of nursing facilities, specifically as it relates to the Upper Payment Limit and Intergovernmental Taxation related items; (iii) provide advice regarding the business and strategies affecting the Company's strategic plan and affairs; and (iv) provide general advisory services and advice from time to time to the Company specifically as it relates to the Upper Payment Limit and Intergovernmental Taxation related items. Consultant shall perform the Services primarily at Consultant's home, office or other place of business at the option of Consultant. Although Consultant shall have the sole discretion and responsibility for the selection of the procedures, processes, materials, working hours and other incidents of the performance of the Services, Consultant shall devote enough effort and time during the Term to perform the Services and complete duties as requested and or expected by the Company. Consultant agrees to use its best efforts in providing the Services for the benefit of Company.

(b) Nothing contained herein shall prohibit Consultant from performing the Services or any other service or advice for other persons, companies or entities during the Term.

4. <u>Compensation of Consultant</u>. As consideration for the performance by Consultant of the Services, Company shall pay Consultant Five Hundred Twenty Five Thousand Dollars ($525,000) on the first day of each calendar quarter during in the first year (commencing October 1, 2015) (provided this Agreement has not been terminated), which first year shall be deemed to commence as of the Effective Date. Then in subsequent years two through years five (provided this Agreement has not been terminated), Company shall pay Consultant One Hundred Twenty Five Thousand Dollars ($125,000) on the first day of each calendar quarter during such four year period. Unless this Agreement is terminated prior to the fifth (5th) anniversary hereof, the total amount to be paid to Consultant over the term of this agreement is Four Million One Hundred Thousand Dollars ($4,100,000) ("<u>Consulting Fee</u>"). The first quarterly payment owed for the Consulting Fee shall be payable on October 1, 2015, with subsequent payments due on each quarter thereafter (January 1, 2016, April 1, 2016, July 1, 2016, etc., through July 1, 2020) during the Term until the aggregate Consulting Fee in the amount of $4,100,000 has been paid in full (provided this Agreement has not been terminated). All out of pocket expenses incurred by Consultant shall be the responsibility of Consultant and <u>only</u> those out of pocket expenses approved in advance in writing by Company shall be reimbursed by the Company.

5. <u>Confidential Information</u>. Consultant hereby covenants, agrees and acknowledges as follows:

(a)     Consultant has and will have access to and will participate in the development of or be acquainted with confidential or proprietary information and trade secrets related to the business of Company and its current and future subsidiaries and affiliates (collectively, with Company, the "Companies"), including but not limited to (i) customer and vendor lists; the identity, lists or descriptions of any new customers or vendors, referral sources or organizations; financial statements; or other financial information; contract proposals or bidding information; business plans; training and operations methods and manuals; personnel records; software programs; reports and correspondence; premium structures; and management systems, policies or procedures, including related forms and manuals; (ii) information pertaining to future developments such as future marketing or acquisition plans or ideas, potential new business locations and new suppliers, and (iii) all other tangible and intangible property, which are used in the business and operations of the Companies but not made public. The information and trade secrets relating to the business of the Companies described hereinabove in this paragraph (a) are hereinafter referred to collectively as the "Confidential Information", provided that the term Confidential Information shall not include any information (x) that is or becomes generally publicly available (other than as a result of violation of this Agreement by the Consultant), or (y) that Consultant receives on a non-confidential basis from a source (other than the Companies or their representatives) that is not bound by an obligation of secrecy or confidentiality to any of the Companies.

(b)     Consultant shall not disclose, use or make known for his or another's benefit any Confidential Information or use such Confidential Information in any way except as is in the best interests of the Companies in the performance of Consultant's duties under this Agreement. Consultant may disclose Confidential Information when required by applicable law or judicial process, but to the extent permitted by applicable law or judicial process to provide (i) notice to Company of any such request for such information, which notice shall include Consultant's intent with respect to such request, and (ii) sufficient opportunity for Company to challenge or limit the scope of the disclosure on behalf of the Companies, Consultant or both.

(c)     Consultant acknowledges and agrees that a remedy at law for any breach or threatened breach of the provisions of this Section 5 would be inadequate and, therefore, agrees that the Companies shall be entitled to injunctive relief in addition to any other available rights and remedies in case of any such breach or threatened breach; provided, however, that nothing contained herein shall be construed as prohibiting the Companies from pursuing any other rights and remedies available for any such breach or threatened breach.

(d)     Consultant agrees that upon termination of Consultant's engagement, Consultant shall forthwith return to Company all Confidential Information in whatever form maintained (including, without limitation, computer discs and other electronic media).

(e)     The obligations of Consultant under this Section 5 shall survive the Term of this Agreement.

(f)     Without limiting the generality of any other section hereof, Consultant hereby expressly agrees that the foregoing provisions of this Section 5 shall be binding upon Consultant's heirs, successors and legal representatives.

6. <u>Non-Assignability</u>. Neither Company nor Consultant shall assign, transfer or subcontract all or any portion of this Agreement or any of its obligations hereunder without the other party's express, prior written permission.

7. <u>Status of Consultant</u>.

(a) It is acknowledged and agreed that Consultant is an independent contractor of Company and Consultant shall not be entitled to neither receive any benefits nor participate in any benefit plans or programs now or hereafter extended by Company to its employees.

(b) The parties agree that nothing contained herein shall operate to constitute Consultant as an employee, agent or representative of Company and Consultant agrees that he has no authority to assume or incur any obligation or responsibility for or on behalf of or in the name of Company, or to bind or attempt to bind Company in any other manner whatsoever.

(a) Consultant shall be solely responsible for the payment of all applicable taxes, including any federal, state or local taxes, incurred or payable by him as a result of the payments hereunder, including, without limitation, all income taxes.

(b) Consultant acknowledges and agrees that the Services to be performed by Consultant under this Agreement are to be performed by Consultant at his own risk and that Consultant assumes all responsibility for any injuries that may result from Consultant's performance of the Services under this Agreement. This Section shall survive the termination of this Agreement.

(c) All works of authorship, computer programs or lists, memoranda, correspondence, documents, records, notebooks and other tangible documents which are made during the Term and which are made by Consultant in the course of rendering the Services to Company are and will remain exclusively the property of Company.

8. <u>Attorney Fees:</u> Each party agrees that if suit is brought to enforce any provision of this Agreement, or to seek damages for its breach, the non-prevailing party will pay to the prevailing party, in addition to any other damages caused to the prevailing party all reasonable attorney fees and costs incurred by the prevailing party in seeking such relief.

9. <u>Binding Effect</u>. Without limiting or diminishing the effect of Section 6 hereof, this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors, legal representatives and permitted assigns.

10. <u>Notices</u>. All notices which are required or may be given pursuant to the terms of this Agreement shall be in writing and shall be sufficient in all respects if given in writing and (i) delivered personally, (ii) mailed by certified or registered mail, return receipt requested and postage prepaid, (iii) sent via a nationally recognized overnight courier, or (iv) sent via facsimile confirmed in writing to the recipient, to Company and Consultant at the addresses set forth

below, or to such other address or addresses as either party shall have designated in writing to the other party hereto.

    If to Company:    c/o FC Domino Acquisition, LLC
                                      3820 Mansell Road, Suite 280
                                      Alpharetta, Georgia 30022
                                      Attn: Christina Firth

    Facsimile: (678) 680-4942

    If to Consultant:    JACCD, LLC
                                        Attn: James G. Burkhart
                                        732 Suffolk Lane
                                        Carmel, Indiana 46032

    11.    <u>Right to Payment</u>. Except as required by law, no right to receive payments under this Agreement shall be subject to anticipation, commutation, alienation, sale, assignment, encumbrance, charge, pledge or hypothecation or to exclusion, attachment, levy or similar process or to assignment by operation of law, and any attempt, voluntary or involuntary, to effect any such action shall be null, void and of no effect.

    12.    <u>Governing law; Choice of Forum</u>. This Agreement and the performance of the parties under this Agreement shall be construed and governed in accordance with the laws of the State of Indiana, to the exclusion of the law of any other forum and notwithstanding any jurisdiction's choice-of-law rules to the contrary. The parties hereby submit to the jurisdiction of the federal, state and local courts in the State of Indiana, and waive any rights to challenge or otherwise raise questions of personal jurisdiction or venue in any action commenced or maintained in such courts.

    13.    <u>Severability</u>. Consultant agrees that in the event that any court of competent jurisdiction shall finally hold that any provision of Section 5 hereof is void or constitutes an unreasonable restriction against Consultant, the provisions of such Section 5 shall not be rendered void, but shall apply to such extent as such court may judicially determine constitutes a reasonable restriction under the circumstances. Both parties agree that if any part of this Agreement other than Section 5 is held by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced in whole or in part by reason of any rule of law or public policy, such part shall be deemed to be severed from the remainder of this Agreement for the purpose only of the particular legal proceedings in question and all other covenants and provisions of this Agreement shall in every other respect continue in full force and effect and no covenant or provision shall be deemed dependent upon any other covenant or provision.

    14    <u>Waiver</u>. Failure to insist upon strict compliance with any of the terms, covenants or conditions hereof shall not be deemed a waiver of such term, covenant or condition, nor shall any waiver or relinquishment of any right or power hereunder at any one or more times be deemed a waiver or relinquishment of such right or power at any other time or times.

15. <u>Entire Agreement: Modifications</u>. This Agreement constitutes the entire and final expression of the agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements, oral and written, between the parties hereto with respect to the subject matter hereof. This Agreement may be modified or amended only by an instrument in writing signed by both parties hereto.

16. <u>No Joint Venture</u>. This Agreement shall not establish or be interpreted as establishing a joint venture, franchise or other agency relationship between Company and Consultant beyond those functions and responsibilities as set forth in this Agreement.

17. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

18. <u>Compliance with Laws and Regulations</u>. In the event that any of the provisions of this Agreement shall be held to be invalid or unenforceable by any local, state or federal governmental agency or by any regulation, the provision(s) affected shall be immediately subject to re-negotiation upon the initiative of either party and the remaining provisions thereof shall nevertheless continue to be valid and enforceable as if the invalid, affected or unenforceable parts had not been included therein.

19. <u>No Third Party Benefit</u>. The Agreement is intended to be solely for the benefit of the parties hereto and is not intended to confer, and shall not be deemed to confer, any benefits upon, or create any rights in or in favor of, any person, company or entity, other than the parties hereto.

20. <u>Guaranty by FC Domino</u>. FC Domino hereby guaranties to Consultant the full and complete payment and performance of all of the obligations of Company under this Agreement, and agrees, jointly and severally with Company, to pay, satisfy and perform the obligations of Company under this Agreement in accordance with the terms of this Agreement. FC Domino acknowledges and agrees that its covenants and obligations under this Section 20 are a material inducement to Consultant entering into this Agreement and that Consultant would not have entered into this Agreement but for the undertakings of FC Domino under this Section 20.

IN WITNESS WHEREOF, Company, FC Domino and Consultant have duly executed and delivered this Consulting Agreement as of the Effective Date.

**COMPANY:**  Cypress Grove RE, LLC
MP RE 2 LLC
IHR Canterbury RE, LLC
IHR Elkhart RE, LLC
IHR Ironwood RE, LLC
IHR Meadow View Health RE, LLC
IHR Medco French Lick RE, LLC
IHR Mount Vernon RE, LLC
IHR Westpark RE, LLC
MP Scott Villa RE, LLC
EHF Michiana RE, LLC
FCE Eastgate, LLC
FCE Parkview, LLC
FCE Prairie Village, LLC
FCE Professional Care, LLC
FCE Todd-Dickey, LLC
IHR RE 2 LLC

By: _____
Name: Christina K. Firth
Title: President and Secretary

**CONSULTANT:**  JACCD, LLC

By: _____
James G. Burkhart, Authorized Member

**FC DOMINO:**  FC DOMINO ACQUISITION, LLC

By: _____
Printed: Christina K. Firth
Title: President and Secretary

(Signature Page to Consulting Agreement)

IN WITNESS WHEREOF, Company, FC Domino and Consultant have duly executed and delivered this Consulting Agreement as of the Effective Date.

COMPANY:  Cypress Grove RE, LLC
MP RE 2 LLC
IHR Canterbury RE, LLC
IHR Elkhart RE, LLC
IHR Ironwood RE, LLC
IHR Meadow View Health RE, LLC
IHR Medco French Lick RE, LLC
IHR Mount Vernon RE, LLC
IHR Westpark RE, LLC
MP Scott Villa RE, LLC
EHF Michiana RE, LLC
FCE Eastgate, LLC
FCE Parkview, LLC
FCE Prairie Village, LLC
FCE Professional Care, LLC
FCE Todd-Dickey, LLC
IHR RE 2 LLC

By: _____
Name: Christina K. Firth
Title: President and Secretary

CONSULTANT:  JACCD, LLC

By: _____
James G. Burkhart, Authorized Member

FC DOMINO:  FC DOMINO ACQUISITION, LLC

By: _____
Printed: _____
Title: _____

(Signature Page to Consulting Agreement)

## SCHEDULE 1 – THE COMPANY

FC Domino Acquisition, LLC
IHR Canterbury RE, LLC
Cypress Grove RE, LLC
EHF Michiana RE, LLC
IHR Elkhart RE, LLC
IHR Ironwood RE, LLC
IHR Meadow View Health RE, LLC
IHR Medco French Lick RE, LLC
IHR Mount Vernon RE, LLC
MP Scott Villa RE, LLC
MP RE 2 LLC
IHR Westpark RE, LLC
FCE Eastgate, LLC
FCE Parkview, LLC
FCE Prairie Village, LLC
FCE Professional Care, LLC
FCE Todd-Dickey, LLC
IHR RE 2 LLC

US.58507598.02

**BARNES&THORNBURG**LLP

11 South Meridian Street
Indianapolis, IN 46204-3535 U.S.A.
(317) 236-1313
Fax (317) 231-7433

www.btlaw.com

December 18, 2015

Brian Beckwith
President
FC Domino Acquisitions, LLC
3500 Lenox Road, Suite 510
Atlanta, Georgia 30326

c/o FC Domino Acquisition, LLC
3820 Mansell Road, Suite 280
Alpharetta, Georgia 30022
Attn: Christina Firth or David Russ

Neil Rock
Skadden, Arps, Slate, Meagher & Flom, LLP
4 Times Square
New York, NY 10036

Mr. Beckwith:

    This responds to your letter to JACCD, LLC ("Consultant") dated September 30, 2015.

    Pursuant to paragraph 4 of the Consulting Agreement between Consultant, the Lessors identified on the last page of your September 30 letter ("Lessors") and FC Domino Acquisition, LLC ("FC"), dated July 1, 2015, Lessors and FC owes Consultant $525,000. That amount was due to Consultant on October 1, 2015. There is no basis in fact or in the contract for Lessors to have paid the $525,000 due Consultant into escrow as you state occurred. That money should be paid to Consultant immediately, pursuant to the terms of the Consulting Agreement.

    Lessors are in breach of the Consulting Agreement. FC is in breach of its guaranty in paragraph 20 of the Consulting Agreement. Consultant demands payment to it of the full $525,000 by 5:00 p.m. (Eastern) on December 24, 2015. If that money is not paid to Consultant by then, Consultant will protect its rights in court.

    An additional $525,000 is due and payable to Consultant on January 1, 2016 pursuant to the Consulting Agreement. Consultant demands timely payment on the same.

Sincerely,

T. Joseph Wendt

INDS01 1579874v1

Atlanta   Chicago   Dallas   Delaware   Indiana   Los Angeles   Michigan   Minneapolis   Ohio   Washington, D.C.

**EXHIBIT B**

# BARNES&THORNBURG LLP

11 South Meridian Street
Indianapolis, IN 46204-3535 U.S.A.
(317) 236-1313
Fax (317) 231-7433

T. Joseph Wendt
(317) 231-7748
tjwendt@btlaw.com

www.btlaw.com

January 14, 2016

Clerk
Hamilton County Court
Government & Judicial Center
One Hamilton County Square, Room 106
Noblesville, IN 46060

**RECEIVED**

**JAN 15 2016**

OFFICE OF THE
CLERK OF COURTS
HAMILTON COUNTY INDIANA

Dear Clerk:

RE: JACCD, LLC v. FC Domino Acquisition, LLC, et al.

To the Clerk:

Enclosed are the original and copies of the following:

1. Complaint for Damages;

2. Appearance of T. Joseph Wendt on behalf of JACCD, LLC;

3. Multiple Summonses; and

4. Check to cover the filing fee.

**Please file the enclosed pleadings with the Court and return everything to me in the enclosed UPS envelope so that I can arrange for service on the defendants.** Pursuant to Indiana Trial Rule 5(F)(4), these pleadings are being sent to you via overnight courier. Please file-mark it as of the date of mailing January 14, 2016. Thank you for your assistance in this matter.

Sincerely,

T. Joseph Wendt

TJW:pf
Enclosures
VIA UPS OVERNIGHT

Atlanta    Chicago    Dallas    Delaware    Indiana    Los Angeles    Michigan    Minneapolis    Ohio    Washington, D.C.